UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAMEL CHANEY-SNELL,

    Plaintiff,

v.                                         Case No. 20-13064

ANDREW YOUNG,                     Honorable Nancy G. Edmunds
ST. CLAIR COUNTY,
ANDREW TEICHOW, and
CITY OF PORT HURON,

    Defendants.
_____/

**OPINION AND ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT [28][30]**

This civil rights lawsuit filed pursuant to 42 U.S.C. § 1983 arises out of the execution of a search warrant and subsequent arrest of Plaintiff Kamel Chaney-Snell on February 6, 2019. Plaintiff brings a Fourth Amendment claim, alleging excessive force and/or failure to intervene, against Defendant Officers Andrew Young and Andrew Teichow and a *Monell* claim against Defendants St. Clair County and City of Port Huron. Before the Court are Defendants Young and St. Clair County's motion for summary judgment (ECF No. 28) and Defendants Teichow and City of Port Huron's motion for summary judgment (ECF No. 30). Both motions are fully briefed. (ECF Nos. 35, 36, 37, 38.) Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be decided on the briefs and without oral argument. For the reasons below, the Court DENIES IN PART and GRANTS IN PART Defendants Young and St. Clair County's motion and DENIES IN PART and GRANTS IN PART Defendants Teichow and City of Port Huron's motion.

1

I.      Background

In February 2019, an agent on the St. Clair County Drug Task Force[1] obtained a search warrant for a residence on Oak Street in Port Huron, Michigan after receiving information from a confidential informant than an individual by the name of "Blade" was selling illegal controlled substances from that residence.  (ECF No. 28-3.)  Plaintiff admitted to being known as "Blade" and selling narcotic drugs from that address at the time.  Defendant Young, a sheriff's deputy with the St. Clair County Sheriff's Department, and Defendant Teichow, a police officer with the Port Huron Police Department, participated in the execution of the search warrant.  The parties differ as to what took place during the execution of the warrant.

According to Plaintiff, he was in his bedroom and initially did not hear any officers knock or announce their presence because he had headphones on and was listening to loud music.  (ECF No. 28-2, PageID.177.)  Plaintiff heard a deep pound or "boom' but initially thought it was from the headphones.  When he heard a "second bang," he took his headphones off and stood up from his bed and heard people coming in the house.  When Defendants Young and Teichow entered the bedroom, Plaintiff was in front of the bed.  The first officer commanded Plaintiff to raise his hands, but despite complying, he was punched in the left eye with such force he lost his senses.  (*Id.* at PageID.182.)  Plaintiff brought down his hands to cover and protect his face, so when Defendant Young asked Plaintiff to put his hands up again, he did not comply because he was using his hands to protect his face.  The same officer asked Plaintiff to put his hands up again, and

---

[1] The St. Clair County Drug Task Force is headed by the St. Clair County Sheriff's Department.

2

when Plaintiff eventually did so, Defendant Young punched him a second time in the same eye.  After the second punch, Plaintiff went down to the floor on his stomach and Defendant Officers handcuffed him.  Plaintiff avers that one of the officers had his knee on his back, putting body weight on his back, even though he was handcuffed and otherwise compliant.  (*Id.* at PageID.184.)  Plaintiff told Defendants that he could not breathe.  Also, while he was still on his stomach, an officer grabbed him by the ankle and dragged him on his shoulder across the carpet, leading to a carpet burn.  (*Id.* at PageID.219-20.)  Defendants then raised Plaintiff to his feet, put his chest against the wall, strip searched him, and put him on the bed.  Plaintiff was eventually given an asthma inhaler and taken to the hospital.  Plaintiff complained that he was unable to open his eye and that he was experiencing pain.  (ECF No. 28-8.)  Hospital records indicate that Plaintiff presented with swelling of his left eye and a CT scan revealed "a nondisplaced minimal blowout fracture of the left orbit."  (*Id.*; *see also* ECF No. 36-14.)

According to Defendant Officers, Defendant Young was the first task force member to enter the residence.  (ECF Nos. 28-6; 28-7.)  Defendant Teichow followed.  As the officers entered the home, they yelled, "Sheriff's Department, search warrant, get on the ground."  Defendants Young and Teichow testified that they proceeded through a kitchen into a living area where they first saw Plaintiff.  They directed him in part to "get on the ground, show us your hands," but he ran into a bedroom and ducked into a small walk-in closet.  The officers followed.  Defendant Young entered the bedroom first and observed Plaintiff in the closet with his back to the officer and his hands concealed.  He ordered Plaintiff to "show us your hands" but Plaintiff did not comply.  Defendant Young entered the closet, pushed Plaintiff against the wall, and then forced him onto the ground into a

3

prone position. Defendant Young ordered Plaintiff to give up his hands but Plaintiff resisted, so he delivered two knee strikes to his upper torso, but Plaintiff continued to resist. (ECF No. 28-6, PageID.274.) Defendant Teichow entered the closet and muscled one of Plaintiff's arms behind his back. Defendant Young pulled his other arm from under his body and secured Plaintiff in handcuffs. Plaintiff denied entering the closet or resisting as Defendant Officers tried to place handcuffs on him.

On January 27, 2020, Plaintiff pled guilty in state court to attempted hindering, resisting, and obstructing a police officer in violation of Michigan Complied Laws § 750.81d. (ECF No. 28-16.) When providing a factual basis for the plea, he testified as follows:

| | |
|---|---|
| [Defense attorney]: | And at some point as the [redacted] Officers entered the home you were given some verbal commands to show them your hands; would that be correct? |
| The Defendant: | Yes. |
| [Defense attorney]: | And you failed to comply with the, with the lawful command of the officer, correct? |
| The Defendant: | Correct. |
| . . . | |
| The Court: | So you knew they were police officers? |
| The Defendant: | I mean, they had a ski masks [sic] on, yes, I knew, but it would – |
| The Court: | You, you knew – |
| The Defendant: | -- happen so fast. |
| The Court: | -- they were police officers? |
| The Defendant: | Yeah. |

(ECF No. 28-14, PageID.348-49.)

4

Plaintiff now alleges he was subjected to excessive force when he was punched twice in the eye by Defendant Young and when either Defendant Young or Defendant Teichow kneeled on his back and dragged him across the room after handcuffing him.[2]

## II. Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'"  *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

---

[2] Plaintiff testified that all of the officers present during the execution of the search warrant were wearing ski masks and he could not identify which officers struck him. However, Defendants Young and Teichow both testified that it was Defendant Young who was the first to enter the room and physically confront Plaintiff and Defendant Teichow followed.  Plaintiff does not contest this point.

5

### III. Fourth Amendment Claim against Defendant Officers

Defendant Young argues that Plaintiff's Fourth Amendment claim is barred by the doctrines of judicial estoppel and *Heck*, and if the Court does not find the claim barred, he is entitled to the protections of qualified immunity. Defendant Teichow also asserts a defense of qualified immunity. Plaintiff argues his claim is not barred and that there are genuine issues of material fact that preclude summary judgment.

#### A. *Heck* Doctrine

Defendant Young invokes the *Heck* doctrine in his initial brief but does not press this argument in his reply brief. Under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), a plaintiff is barred from asserting a § 1983 claim that necessarily implies the invalidity of an underlying criminal conviction. An excessive force claim may conflict with a prior conviction when (1) "the criminal provision makes the lack of excessive force an element of the crime," or (2) "excessive force is an affirmative defense to the crime." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). In *Schreiber*, the Sixth Circuit "held that a conviction for resisting or obstructing arrest under Michigan Complied Laws § 750.81d does not bar a subsequent excessive force claim under section 1983, because the statute does not require that the State prove or the defendant admit that the arresting officer did not use excessive force." *Knox v. Scruggs*, No. 17-10900, 2018 U.S. Dist. LEXIS 54545, at *11 (E.D. Mich. Feb. 5, 2018), *adopted by* 2018 U.S. Dist. LEXIS 53710 (E.D. Mich. Mar. 30, 2018) (internal quotation marks and citations omitted). Defendant argues that intervening caselaw has called *Schreiber* into question. However, this Court agrees with the courts in this district that have considered and rejected this argument, finding that

6

*Schreiber* remains good law. *See id.* at *11-14 (citing cases). Thus, Plaintiff's claim is not barred by *Heck*.

### B. Judicial Estoppel

Defendant Young argues that the doctrine of judicial estoppel bars Plaintiff's claim or, alternatively, that Plaintiff should be estopped from relying on certain portions of his deposition testimony due to the statements he made during his plea hearing in state court. Plaintiff argues that judicial estoppel is inapplicable here.

"The doctrine of judicial estoppel prevents a party who successfully assumed one position in a prior legal proceeding from assuming a contrary position in a later proceeding." *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014) (citation omitted). Three factors are used to help a court decide whether the doctrine applies. *See id.* First, the party's later position must be clearly inconsistent with an earlier position. *Id.* Second, the party must have succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was misled. *Id.* Third, the party seeking to assert an inconsistent position will derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*

Defendant Young notes that Plaintiff testified in state court that he failed to comply with a command to show his hands and argues that this is inconsistent with his position in this case. Defendant further argues that Plaintiff's earlier position was accepted by the state court when it accepted his plea and entered the criminal conviction, and that Plaintiff will achieve an unfair advantage if not estopped because he received a favorable plea

7

deal but now takes a contrary position in an attempt to succeed in this civil case. Plaintiff disputes the first factor only and argues that his two positions are not clearly inconsistent.

The Court declines to find Plaintiff's statements at the plea hearing and his deposition testimony *clearly* inconsistent. While Plaintiff responded "yes" when asked at the plea hearing if he failed to comply with a command to show the officers his hands, he had been asked about whether he had done so "at some point as the . . . Officers entered the home." (ECF No. 28-14, PageID.348.) The framing of the question may indicate that this took place when he first encountered the officers but does not eliminate the possibility that it had been the second, not the first time, he had been given this command, as he testified at his deposition:

> Q: Earlier at your plea hearing you didn't comply with that. Where were you [sic] hands, sir?
> A: My hands, it had to be down, it wasn't up, they had to be maybe to my side. Not that many places a hand can go, maybe to my side maybe.
> Q: Why didn't you show your officers your hands when they directed you to show them your hands?
> A: I actually showed them my hands the first time they asked me. It was the second time that I didn't comply. The first time I complied.

(ECF No. 28-2, PageID.181.) Thus, this is not the type of situation we would have had if Plaintiff testified that he was complying with officers at all times, as he seemed to allege in his complaint. The degree to which the two positions are found to be inconsistent turns on whether certain statements Plaintiff made during his deposition are credited. But the Court cannot weigh the evidence or make credibility determinations on summary judgment. *See White v. City of Southfield*, No. 14-cv-10557, 2015 U.S. Dist. LEXIS 124881, at *15 (E.D. Mich. Sept. 18, 2015) (noting, in the context of a judicial estoppel analysis, that "to the extent [the plaintiff]'s positions have been inconsistent, that goes to

8

the weight and credibility of his evidence, which is not an issue for summary judgment"). Thus, even though Plaintiff's statements in state court are relevant to this case, the Court does not find an application of judicial estoppel appropriate here.

### C. Qualified Immunity

#### 1. Standard

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (internal quotation marks and citation omitted). Qualified immunity is a threshold question the Court is required to rule on "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). When a government official raises a defense of qualified immunity, the plaintiff bears the burden of proving that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Court undertakes a two-step analysis when determining whether a government official is entitled to qualified immunity. The first inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Giley*, 500 U.S. 226, 232 (1991). If no constitutional right was violated, there is no need for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

9

violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). "Reasonableness" is a question of law to be decided by the trial court.

### 2. Analysis

A claim stemming from an officer's alleged use of excessive force during an arrest or other seizure of a free citizen is governed by the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Appling this standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations and citations omitted). In making this determination, courts consider "the totality of the circumstances," including the following factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. This inquiry is undertaken from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* In other words, courts must keep in mind "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. But ultimately the reasonableness inquiry is an objective one: "the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Defendant Young concedes that he would not be entitled to qualified immunity if he had punched Plaintiff in the face after Plaintiff had surrendered. But he argues that

10

Plaintiff was struck after refusing to show his hands, and because selling drugs is a serious crime and Plaintiff was putting the officers in serious risk of harm by resisting arrest, his use of force was reasonable and he is entitled to qualified immunity. Defendant Officers also argue that dragging Plaintiff across the carpet and placing a knee on his back do not constitute excessive force.

While the first two *Graham* factors—the seriousness of the underlying offense and the risk of harm to the officers—weigh in favor of Defendants here, there are questions of fact surrounding whether Plaintiff was actively resisting arrest and at what point he was struck. And while an officer's use of force may be reasonable when a suspect is actively resisting arrest, the type of force that has been found to be reasonable is the use of a taser or a knee strike to subdue the suspect. *See Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015). But, here, Plaintiff testified that Defendant Young punched him in the eye twice. He also testified that Defendants Officers kneeled on his back and dragged him across the room after handcuffing him.[3] *See Bultema v. Benzie County*, 146 F. App'x 28, 35 (6th Cir. 2005) (citing *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)) (noting "that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional"). In sum, a reasonable jury could find that Defendant Officers violated Plaintiff's right to be free from excessive force.

Defendant Officers argue that Plaintiff's inability to identify which officer did what is fatal to his claim. The Sixth Circuit has, however, "relieve[d] the plaintiff of the

---

[3] Defendant Teichow argues that Plaintiff's allegation that he was dragged across the room is "blatantly contradicted" by the record—more specifically, the pictures showing that the bedroom was rather small. However, the photos do not conclusively show that Plaintiff was not dragged in a way that was objectively unreasonable while in handcuffs, leading to a carpet burn on his shoulder.

11

summary-judgment burden to pinpoint *which* specific officer committed *which* unconstitutional act" when there is sufficient evidence each individual defendant in a small group of officers committed allegedly unconstitutional acts within each other's presence.[4] *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 492-93 (6th Cir. 2020) (citing *Fazica v. Jordan*, 926 F.3d 283, 292 (6th Cir. 2019)). Plaintiff has pled excessive force and failure to intervene in the alternative. An officer may be liable for failing to intervene when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (internal quotation marks and citation omitted). Here, Defendants Young and Teichow were both in the bedroom during the relevant timeframe, admittedly working together to place Plaintiff under arrest; thus, the first factor is met. The question then is whether one officer had the opportunity to stop the force used by the other officer. "[W]here the act of excessive force unfolds in a matter of seconds, the second requirement is generally not satisfied." *Alexander v. Carter*, 733 F. App'x 256, 265 (6th Cir. 2018) (internal quotation marks and citation omitted). *But see Goodwin v. City of Painesville*, 781 F.3d 314, 319, 329 (6th Cir. 2015) (finding a jury could conclude a reasonable officer had sufficient opportunity to intervene during tasings that lasted a total of twenty-six seconds). In light of Plaintiff's testimony that he was punched in the eye twice and then subjected to some level of force even after being handcuffed, a reasonably jury could conclude that Defendants Young

---

[4] The Sixth Circuit has "applied *Fazica*'s rule only when circumstances beyond the plaintiff's control made the plaintiff unable to learn the identity of the defendants who violated the plaintiff's constitutional rights." *Pineda*, 977 F.3d at 493. Here, Plaintiff testified that the officers were all wearing ski masks.

and Teichow both violated Plaintiff's constitutional rights under either an excessive force or failure to intervene theory.

Finally, the Court finds that the constitutional rights at issue were clearly established. "A suspect has a clearly established right to be free from the use of physical force by police officers when he is not resisting efforts to apprehend him." *Coffey v. Carroll*, 933 F.3d 577, 589 (6th Cir. 2019) (citing *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)). "Even in a case where the subject may be giving some resistance, it is clearly established that, where the subject no longer poses a threat, officers are not entitled to . . . repeatedly strike the subject." *Grinnell v. City of Taylor*, No. 17-11354, 2021 U.S. Dist. LEXIS 83789, at *38-39 (E.D. Mich. May 3, 2021) (citing Sixth Circuit cases). And when a person has been placed in handcuffs, it is clearly established that the "gratuitous use of force" on the suspect is unconstitutional. *Bultema*, 146 F. App'x at 35 (citing *McDowell*, 863 F.2d at 1307); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004) (noting it is clearly established that "applying pressure to an arrestee's back" is objectively unreasonable). Finally, the Sixth Circuit has "repeatedly denied qualified immunity when officers observe the use of excessive force yet fail to intercede." *Kulpa v. Cantea*, 708 F. App'x 846, 854 (6th Cir. 2017) (citing cases). The Court therefore denies both Defendants Young and Teichow's request for qualified immunity.

## IV. *Monell* Claim against Municipalities

Both Defendants St. Clair County and City of Port Huron argue that dismissal of the *Monell* claim brought against them is warranted. Plaintiff agrees to dismiss the claim

13

against the City of Port Huron but argues he has a valid claim against St. Clair County for inadequately training and supervising its officers.

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a plaintiff must show "'that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)). Thus, a plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. *See Monell*, 436 U.S. at 694. "[T]here must be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). One way to prove an unlawful municipal policy or custom is to show "the existence of a policy of inadequate training or supervision." *See Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). To succeed on a failure to train or supervise claim, the plaintiff must prove that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286-87 (6th Cir. 2020) (internal quotations and citation omitted).

"There are at least two situations in which inadequate training could be found to be the result of deliberate indifference. First, and most commonly, a plaintiff can demonstrate deliberate indifference by showing that the municipality has failed to act in response to repeated complaints of constitutional violations by its officers." *Id.* Second, in a narrow set of circumstances, "a plaintiff can show that a municipality was deliberately

indifferent by failing to equip law enforcement officers with specific tools to handle recurring situations." *Id.* Under this approach, known as "single-incident liability," the risk of the constitutional violation must be so obvious or foreseeable that it amounts to deliberate indifference for the municipality to fail to prepare officers for it. *Id.*

Plaintiff premises his claim against St. Clair County on the latter approach. But Defendant Young testified that he has received training as well as performance evaluations during his time with the St. Clair County Sheriff's Department. (ECF No. 28-6, PageID.265.) Thus, the record does not give rise to a claim under a theory of single-incident liability. *Cf. Ouza*, 969 F.3d at 289 (finding an issue of fact regarding a claim under this theory when the municipality failed to provide its police officers with *any* relevant training and did not conduct performance evaluations or otherwise monitor officers' conduct) (emphasis added). Accordingly, the Court enters summary judgment in favor of both St. Clair County and City of Port Huron as to Plaintiff's *Monell* claim.

**V.     Conclusion**

For the foregoing reasons, Defendants Young and St. Clair County's motion for summary judgment is DENIED IN PART and GRANTED IN PART and Defendants Teichow and City of Port Huron's motion for summary judgment is DENIED IN PART and GRANTED IN PART. Accordingly, Plaintiff's Fourth Amendment claim against Defendant Officers Young and Teichow survives summary judgment, while Plaintiff's *Monell* claim against Defendants St. Clair County and City of Port Huron is dismissed with prejudice.

SO ORDERED.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated: September 30, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2022, by electronic and/or ordinary mail.

                                              <u>s/Lisa Bartlett</u>
                                              Case Manager